**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMILLE C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-01640-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues, and the matter is now ready for decision.

## BACKGROUND

On May 16, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. On June 1, 2016, Plaintiff also filed a Title XVI

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

application for supplemental security income. Both applications alleged disability beginning January 20, 2014. Plaintiff's applications were denied initially and upon reconsideration. (AR 130-133, 139-143.) A hearing took place on August 15, 2018 before an Administrative Law Judge ("ALJ"). (AR 33-67.) Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. *Id.*

In a decision dated September 13, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: "fibromyalgia; migraines; left shoulder impingement and history of rotator cuff tear, status post arthroscopic subacromial decompression in December 2013; history of cerebrovascular accident (CVA) with residual left-sided weakness; and restrictive lung disease as a residual effect of pneumonia in early 2018." (AR 17.) After finding that Plaintiff's impairments did not meet or equal any listed impairment, the ALJ assessed Plaintiff with the residual functional capacity ("RFC") to perform "light work . . . except as follows: must use a hand-held assistive device in one hand when walking with the other hand available to carry small articles like docket files, ledgers, and small tools; occasionally perform postural activities except never climb ladders, ropes, or scaffolds; no reaching overhead with the non-dominant left upper extremity; and avoid concentrated exposure to extreme cold, extreme heat, respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation, and hazards such as unprotected heights, open bodies of water, and moving mechanical parts of equipment, tools, or machinery." (AR 20-21.) Relying on the testimony of the VE, the ALJ concluded Plaintiff was able to perform her past relevant work. (AR 26-27.) Accordingly, the ALJ found Plaintiff not disabled. (AR 27.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-5), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

(1) Whether the ALJ properly discounted Plaintiff's subjective complaints.

(2) Whether the ALJ properly assessed Dr. Hedy Loa's (treating physician) opinion.

(3) Whether the ALJ fully and fairly developed the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is also "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where this evidence "can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner." *Id.* In making this determination, the Court must consider the record as a whole – weighing evidence that supports as well as evidence that detracts from the ALJ's determination. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in not fully crediting Plaintiff's testimony regarding her pain and subjective limitations and hence erred in assessing Plaintiff's RFC. (ECF No. 19 at 4, 8-11.)

**A. Plaintiff's Subjective Complaints**

Plaintiff testified that she stopped working due to her fibromyalgia, arthritis, and the consequences of her stroke in 2012. (AR 41-42.) She specified that colder temperatures, such as a cold office temperature, worsen her pain. (AR 41.) Plaintiff explained that, before leaving her former job, she "tried everything" to decrease her pain including putting a heater under her desk, having a blanket on her lap, and wearing long sleep sweaters under her clothes. (AR 42.) Plaintiff takes medications for the fibromyalgia and has received multiple injections. (AR 46.) She

3

acknowledged that these treatments help "a little bit, but not a lot," and she still "can't do very much." (AR 46.) Plaintiff testified that she has daily migraines and, when the migraines get especially severe twice a month, she "can't function, period." (AR 48.) Plaintiff has received injections in her neck for the migraines. (AR 48.)

Plaintiff also testified that her legs "hurt a lot," and she uses a cane because "[i]f I don't use it, I fall. I've had multiple fallings" since the stroke. (AR 42.) At the hearing, Plaintiff wore a boot to protect the sprained ankle she had acquired from a recent fall. (AR 42.) Plaintiff testified she cannot do any housework since she "can't carry anything or push anything." (AR 43.) When showering, Plaintiff's husband stays in the room with her so she "won't slip and fall," and she uses a showerhead with a removable nozzle and a shower chair. (AR 43-44.) Plaintiff explained that she cannot put on a bra or shirt by herself and dressing has become "harder and harder," especially "in the past two years." (AR 44.) Plaintiff mentioned she experiences numbness in both of her hands and feet. (AR 46.) Plaintiff explained her hands "freeze up," so she does not use her computer "at all." (AR 48.) Plaintiff also mentioned she cannot write as much as she used to – specifying that she loved to write letters/invitations for friends but "can't do that anymore." (AR 48.) Plaintiff also stated that, since her stroke, her memory has continuously declined. (AR 40, 43, 46-47.) Plaintiff noted that she is "very limited" in how much she can drive due to weakness in the left side of her body and her forgetfulness. (AR 40.) Plaintiff described that she only leaves her house twice a week when her husband takes her to "Walmart or to my mom's house." (AR 40-41.)

Plaintiff further testified that, after tearing her left shoulder's rotator cuff, she can experience excruciating pain all day in her shoulder, cannot lift her arm above her shoulder, and cannot fully extend her arm in front of her. (AR 44-46.) Plaintiff also noted that she sometimes gets shortness of breath, which started after being in the hospital for three weeks with pneumonia/respiratory failure. (AR 42, 49-50.) Plaintiff mentioned she has mental health issues (such as depression) but that her

mental health is being treated and is not keeping her from working. (AR 51, 241; ECF No. 19 at 10.)

**B. Relevant Law**

Where a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear, and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)) (en banc).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

///

///

**C. Analysis**

The ALJ "[found] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not make a finding of malingering. (AR 22.) Nonetheless, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.) The Ninth Circuit has observed that a version of this boilerplate statement is routinely included in an ALJ's decision "as an introduction to the ALJ's credibility determination" after which the ALJ will "typically identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103. Here, to support the conclusion that Plaintiff's testimony should be fully credited, the ALJ relied upon (i) inconsistency between the objective medical record and Plaintiff's subjective claims, (ii) Plaintiff's Social Security Administration ("SSA") field office interview, (iii) Plaintiff's daily activities, and (iv) Plaintiff's demeanor at her hearing. (AR 25-26.)

<u>Objective Medical Evidence Inconsistent with Subjective Claims</u>

The ALJ concluded that Plaintiff suffers from the severe medical impairment of fibromyalgia. (AR 17.) Nevertheless, he determined that Plaintiff's subjective complaints were inconsistent with the medical record, which contained many normal and mild clinical exam findings. (AR 22.)

Generally, inconsistency or contradiction with the medical record can be a sufficient legal basis for rejecting a claimant's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). However, the Ninth Circuit has recognized that "there are no laboratory tests to confirm the diagnosis [of fibromyalgia]," and fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms.'" *Revels v. Berryhill*, 874 F.3d 648, 656, 666 (9th Cir. 2017). Thus, the Ninth Circuit instructs that "[i]n evaluating

whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . . The failure to do so is error." *Revels*, 874 F.3d at 662.

To support his determination that the medical record was inconsistent with Plaintiff's subjective complaints, the ALJ cited to Plaintiff's visits with Dr. Gregory Northrup, Dr. Hedy Loa, and Azusa Pain Management (pain specialist). Dr. Loa, Plaintiff's treating physician, noted that Plaintiff has fibromyalgia and referred Plaintiff to a specialist for pain treatment. (AR 384.) Dr. Northrop (Risser Orthopaedic Group) operated on Plaintiff's torn rotator cuff (left shoulder) but did not treat her fibromyalgia. (*See* AR 404 ("I encouraged her to see her former pain management physician in West Covina. I will continue to refill the Norco for now but I expect at some point this will be turned over to a pain management physician as she is taking Norco not just for her shoulder but for multiple joint complaints which seem to be cold related.").) Moreover, on a page the ALJ cites as demonstrating "normal musculoskeletal and neurological" exam findings, Dr. Northrup reported: "Musculoskeletal: Present – Joint Pain, Joint Stiffness and Muscle Pain" and "Neurological: Present – Numbness and Stroke." (AR 404.)

Azusa Pain Management ("APM") treated Plaintiff for her fibromyalgia and, in each progress report, listed fibromyalgia and arthritis as part of Plaintiff's "Assessment" as well as her "Past Medical History." (*E.g.*, AR 516, 518.) These progress reports note that "cold weather exacerbates [Plaintiff's] pain" and that Plaintiff has "gen. body pain; fibromyalgia." (*E.g.*, AR 510, 516.) APM recorded that Plaintiff's pain "developed gradually several years ago" and is "9/10 in severity." (*E.g.*, AR 510.) In Plaintiff's "Physical Examination" section, APM repeatedly reported that Plaintiff had "tender points" in her cervical spine, thoracic spine, lumbosacral spine, and had "[m]arked tenderness over B SI joints" in her pelvis. (*E.g.*, AR 512); *see also* Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability: Law and Procedure in Federal Court* § 5:71 (2020) ("[Fibromyalgia] is

diagnosed by a process of exclusion and testing of certain 'focal tender points' on the body for the acute tenderness which is characteristic in fibrositis patients.").

APM treated Plaintiff with pain medication to "help decrease pain and improve ADLs" but instructed Plaintiff "that attaining a 'pain free' condition is not feasible or the goal of treatment." (*E.g.*, AR 513.) APM prescribed the following medications to treat Plaintiff's fibromyalgia: Fentanyl, Norco, gabapentin, Fentanyl patch, Nucynta, and baclofen. (*E.g.*, AR 510, 514.) APM increased the dosages of these medications in 2016 and in 2017. (AR 513, 603, 607.) APM also administered a B SI joint injection, trigger point injections (TPI) of Plaintiff's bilateral lumbar paraspinous, rhomboids, and gluteus muscles, and cortisone injections in Plaintiff's hips and shoulders. (AR 514, 603, 631); *see Revels*, 874 F.3d at 667 (doubting that epidural steroid shots to the neck and lower back are merely "conservative" medical treatment). APM also "[a]dvised patient to f/u PCP for possible psychiatry consult for depression." (AR 514); *see Revels*, 874 F.3d at 657 (listing memory problems ("fibro fog"), depression, and anxiety disorder as symptoms of fibromyalgia).

Citing to medical records from Dr. Northrup, Dr. Loa, and APM, the ALJ concluded that Plaintiff's subjective symptoms "are not entirely consistent with the medical evidence," stating: "[T]here are many visits in the medical evidence record from 2015, 2016, 2017, and 2018 that report normal exam findings, including mental status, HEENT, cardiovascular, respiratory, abdomen and the extremities. There are also many visits in the medical evidence record that evidence many normal musculoskeletal and neurological (e.g., strength, sensation, gait) exam findings though she has subjective complaints of tenderness." (AR 22 (citations omitted).) Yet, as in *Revels*, the examination results cited by the ALJ are not inconsistent with "debilitating fibromyalgia" because there are no tests that can confirm fibromyalgia. *See Revels*, 874 F.3d at 656, 666. As a result, the mere absence of objective clinical findings is not evidence of an inconsistency with Plaintiff's subjective complaints. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("[T]he ALJ erred in . .

. relying on his disbelief of [plaintiff's] symptom testimony as well as his misunderstanding of fibromyalgia. The ALJ erred by 'effectively requir[ing] "objective" evidence for a disease that eludes such measurement.'" (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003))). Hence, the cited medical records – which lack affirmative evidence of fibromyalgia – do not evidence inconsistencies and do not provide a clear and convincing reason for discounting Plaintiff's testimony.[2]

<u>Observations of the SSA Interviewer</u>

The ALJ determined that the observations of an SSA interviewer undermined Plaintiff's allegations, noting that the SSA interviewer "did not observe or perceive that the claimant had any difficulty with any functional abilities including the following: hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using hand(s), and writing." (AR 25.) Plaintiff argues that the observations by this "representative behind a counter . . . have nothing to do with the limitations to which Plaintiff testified." (ECF No. 19 at 8-9.) Significantly, the ALJ never identified which part of Plaintiff's testimony he found not credible[3] and never explained how the interviewer's

---

[2] The Commissioner cites cases discussing subjective symptoms not fully substantiated by the medical record. (ECF No. 24 at 4.) But, "[a] finding that the degree of alleged limitations is not substantiated by the record is different from a finding that it is inconsistent with the record . . . ." *Mitzel v. Berryhill*, 2017 WL 434431, at *3 (W.D. Wash. Feb. 1, 2017). Even if the ALJ meant to say that Plaintiff's subjective symptoms are not substantiated by the record, the analysis regarding fibromyalgia symptoms would be the same and that reason alone cannot be a basis for the Commissioner's conclusion. Because the ALJ's other reasons for rejecting Plaintiff's testimony are insufficient (as discussed below), the ALJ "may not reject [Plaintiff's] subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *See, e.g., Bunnell*, 947 F.2d at 345.

[3] In an earlier portion of the decision, the ALJ states that, "[a]t the hearing," Plaintiff testified "[s]he cannot . . . write." (AR 22.) While Plaintiff testified that she does not use her computer, Plaintiff did not clearly testify that she cannot write. (AR 48.) Plaintiff testified that both hands can get numb and "freeze up" but acknowledged that her right/dominant hand functions better than her left and she can still sew. (AR 43, 46, 48.) Plaintiff also explained that her symptoms have "[affected]" her writing – but not necessarily eliminated it. (AR 48 ("I used to love to write. I used to love to write

9

observations undermined that testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Given these critical deficiencies, the ALJ did not properly discount Plaintiff's testimony based on her SSA interview. *See Brown-Hunter*, 806 F.3d at 493.

### Daily Activities

An ALJ may discredit subjective symptoms when a plaintiff reports participation in daily activities that indicates capabilities transferable to a work setting. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Thus, if supported by substantial evidence, an ALJ may make an adverse credibility finding by showing Plaintiff "[engaged] in daily activities that are incompatible with the severity of symptoms alleged." *See Ghanim*, 763 F.3d at 1165; *Burch*, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony."). When making this adverse credibility determination, an ALJ must explain "*which* daily activities conflicted with *which* part of Claimant's testimony." *Burrell*, 775 F.3d at 1138 (emphasis in original); *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily

---

my kids' names and write letters. Everybody used to come to me and write letters for them, write their invitations to stuff. I can't do *that* anymore." (emphasis added)).) Moreover, even if Plaintiff had testified to not being able to write, the ALJ failed to make clear that this was the basis for his adverse credibility determination. *See Burrell*, 775 F.3d at 1138 ("But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony. The only mention found in the ALJ's decision is five pages earlier, when summarizing Claimant's testimony . . . . Here, the ALJ stated only – in passing and in a different section than the credibility determination – that Claimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing. That finding is insufficient . . . .").

10

activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to overall disability.").

In the present case, the ALJ determined that Plaintiff's daily activities, as recorded in a function report and a consultative examiner's report, undermined her subjective allegations. (AR 25.) While ALJ's decision summarizes evidence regarding daily activities, it did not explain how Plaintiff's daily activities undercut her subjective claims. That is insufficient. *See Burrell*, 775 F.3d at 1138.

The Commissioner argues that certain activities listed by the ALJ contradict Plaintiff's testimony. (ECF No. 24 at 5-6.) For instance, the Commissioner cites to the following testimony by Plaintiff: "I have one of those chairs in my shower and my husband got me a special showerhead, where it takes off the nozzle and I could shower myself with it, but he's in the room." (*Id.* at 5; AR 43-44.) Interpreting this testimony to mean that Plaintiff said "she needed help for self care"[4] (ECF No. 24 at 5), the Commissioner argues that this testimony "is in direct contrast" to the consultative examination during which Plaintiff indicated "[s]he is able to take care of her hygiene and grooming with no assistance." *Id.* Even assuming the Commissioner's characterization is correct, the ALJ's decision does not purport to rely upon this proposed inconsistency, and therefore, it cannot provide a basis for affirmance. *See Burrell*, 775 F.3d at 1138 ("[T]he government identifies *other* alleged inconsistencies between Claimant's hearing testimony and her reported daily activities . . . . But the ALJ did not identify those inconsistencies. 'We are constrained to review the reasons the ALJ asserts.'" (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003))). Because the ALJ's decision did not explain how the daily activities in the reports discredit Plaintiff's testimony and failed to identify what testimony is not credible, the Court may not speculate as to the ALJ's reasons for

---

[4] Plaintiff answered "yes" to requiring assistance with dressing or bathing and then specified that she needs help dressing. (AR 43.) As to bathing, Plaintiff says her husband is in the room with her but clarifies "I could shower myself with [the special showerhead]." (AR 43-44.)

rejecting that testimony. *See Brown-Hunter*, 806 F.3d at 493 ("[ALJ] must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."); *Treichler*, 775 F.3d at 1103.

Thus, the ALJ's reliance on Plaintiff's daily activities is not a legally sufficient ground for discounting Plaintiff's subjective symptom claims.

### Demeanor at Hearing

Finally, the ALJ found that Plaintiff's demeanor at the hearing undermined her allegations. (AR 26.) While the ALJ may consider personal observations alongside other credibility indicators, these observations "may not form the sole basis for discrediting a person's testimony." *Orn v. Astrue*, 495 F.3d 625, 639-640 (9th Cir. 2007); *Estrada v. Colvin*, No. 1:14-cv-02098-BAM, 2016 WL 1181505, at *10 (E.D. Cal. Mar. 28, 2016) (deciding the ALJ could "consider observations that Plaintiff [participated] in the hearing without distraction, which contradicted hearing testimony regarding maintaining concentration"). The ALJ reported that Plaintiff "was lucid and responsive to questioning. Her answers demonstrated good memory recall and logical thinking, as her answers were relevant and responsive. Her demeanor and testimony also reflected good social interaction and concentration, persistence and pace. She was also cooperative, voluntarily offered information, and seemed at ease with the hearing process." (AR 26.) The Commissioner argues that these observations show Plaintiff's testimony regarding her forgetfulness[5] is "less than fully credible." (AR 39; ECF No. 24 at 6.) As Plaintiff points out, the Commissioner again speculates as to the ALJ's reasoning because the ALJ did "not set forth what it was about Plaintiff's answering questions that in any way was applicable to discrediting her testimony" and did not identify which part of Plaintiff's

---

[5] During the hearing, Plaintiff mentioned that, since her stroke, her memory has continuously declined and was especially poor in February 2018. (AR 46-47.) Plaintiff indicated that these mental issues are not severe enough to keep her from working. (AR 51, 241; ECF No. 19 at 10.)

testimony was less than credible. (ECF No. 19 at 11); *see Burrell*, 775 F.3d at 1138; *Holohan*, 246 F.3d at 1208. Moreover, since the ALJ's other reasons for rejecting Plaintiff's testimony have failed, the ALJ's personal observations cannot "[stand] alone" in supporting his adverse credibility finding. *See Orn*, 495 F.3d at 639-640.

Thus, Plaintiff's demeanor at the hearing is not a legally sufficient basis for discounting Plaintiff's subjective symptom claims.

\* \* \* \* \*

In sum, the ALJ erred by failing to provide specific, clear, and convincing reasons to support his decision to discredit Plaintiff's subjective complaints concerning pain and other symptoms. In light of the significant functional limitations reflected in Plaintiff's testimony, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting [Plaintiff's] testimony, could have reached a different disability determination." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006). Thus, this error was not harmless. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 492 (noting an ALJ's failure to adequately specify reasons for discrediting claimant's testimony "will usually not be harmless").

### D. Remedy

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings.[6]

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 7/9/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[6] It is not the Court's intent to limit the scope of the remand.

14